## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DYNAMIC PRODUCTION, INC. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-1032 |
| | § | |
| CIMA ENERGY LTD., CIMA | § | |
| ENERGY MANAGEMENT, LLC, | § | |
| GULF COAST ENERGY INC., | § | |
| GENESIS CRUDE OIL, LP, and | § | |
| ECLIPSE SERVICES, INC., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This property dispute is before the Court on cross motions for summary judgment filed by Plaintiff Dynamic Production, Inc. ("Dynamic") and Defendants CIMA Energy Ltd. and CIMA Energy Management, LLC (collectively, "CIMA").[1] Also pending is CIMA's Motion for Partial Judgment on the Pleadings on Dynamic's Claim for Attorney's Fees [Doc. # 30].[2]

---

[1] *See* Dynamic's Motion for Partial Summary Judgment as to Liability [Doc. # 21]; CIMA's Motion for Summary Judgment [Doc. # 32]. CIMA filed a Response to Dynamic's summary judgment motion [Doc. # 39] and Dynamic did not file a Reply. Dynamic filed a Response to CIMA's summary judgment motion [Doc. # 37] and CIMA filed a Reply [Doc. # 41].

[2] Dynamic filed a Response [Doc. # 40], CIMA filed a Reply [Doc. # 43], and Dynamic filed a Sur-Reply [Doc. # 44].

By Order [Doc. # 33] entered November 13, 2017, the Court referred all nondispositive motions and other pretrial matters in this case to United States Magistrate Judge Dena Palermo for determination and all potentially dispositive motions to Magistrate Judge Palermo for Report and Recommendation ("R&R"). On February 21, 2018, Magistrate Judge Palermo issued her R&R [Doc. # 50], recommending that the pending cross motions for summary judgment each be granted in part and denied in part and that the pending motion for judgment on the pleadings be denied. Dynamic filed Objections [Doc. # 53] to the recommendation that CIMA's motion for partial summary judgment be granted on the issue of limitations, and CIMA responded.[3] CIMA also filed Objections [Doc. # 54] to the Magistrate Judge's recommendation that Dynamic's motion for partial summary judgment be granted with respect to Dynamic's claims for conversion that are not time barred.[4] The objections are ripe for review.

No party has objected to the Magistrate Judge's recommendation regarding CIMA's Motion for Partial Judgment on the Pleadings on Dynamic's Claim for Attorney's Fees. After careful consideration, the Court concludes the portion of

---

[3]     Response to Dynamic's Objections [Doc. # 55]. Dynamic did not file a Reply.

[4]     Dynamic filed a Response to CIMA's Objections [Doc. # 56]. CIMA did not file a Reply.

the R&R addressing CIMA's motion for judgment on the pleadings is well founded and the Court adopts it in its entirety.[5]

The Court also adopts the remainder of the R&R in its entirety and elaborates as explained below.

## I.    <u>BACKGROUND</u>

The Magistrate Judge set forth the "Background" of this case thoroughly and accurately, and this Court adopts that summary as its own. Briefly, non-parties North Shore Energy, L.L.C. ("North Shore") and the Harkins family entered into an option agreement with respect to certain lands in Goliad County, Texas (the "Option Agreement"). In September 2009, North Shore purportedly exercised its rights under the Option Agreement to lease certain lands owned by the Harkins, on which land it proceeded to drill a well on (the "Well"). In January 2010, the Well began producing oil and gas (the "Production"), and North Shore began selling the Production to CIMA that same month.

Several months later, Dynamic discovered that the Well was on land not included in the Option Agreement and notified the Harkins family. The Harkins family offered both North Shore and Dynamic the opportunity to lease the

---

[5]    *See* R&R, pp. 28-30

pertinent parcel of land where the Well was located. North Shore declined, and ultimately the Harkins family awarded a lease to Dynamic.

North Shore ignored the lease between Dynamic and the Harkins family and continued to sell the Production to CIMA. In August 2010, North Shore filed suit (the "Goliad Suit") against Dynamic and the Harkins family to invalidate Dynamic's lease and quiet title to the land on which the Well had been drilled. Dynamic and the Harkins family counterclaimed against North Shore in the Goliad Suit for, among other causes of action, conversion of the Production.

In September 2011, the trial court in the Goliad Suit granted North Shore's motion for summary judgment and voided Dynamic's lease with the Harkins family. After a trial on certain other claims, Dynamic and the Harkins family appealed the trial court's summary judgment ruling. The appeals court, reversing the trial court's decision, concluded the Option Agreement was ambiguous as to whether it included the land on which the Well was drilled. Both sides appealed the intermediate appellate court's decision to the Texas Supreme Court, which ultimately held, as a matter of law, that the Option Agreement was unambiguous and did not include the land encompassing the Well. On December 9, 2016, the Texas Supreme Court remanded the matter back to the trial court for further proceedings consistent with its opinion.

On December 19, 2016, Dynamic filed this lawsuit against CIMA asserting multiple causes of action, including conversion of the Production.[6]

## II. ANALYSIS

Both Dynamic and CIMA timely filed objections to the R&R. The Court considers the parties' objections in turn.

### A. Dynamic's Objections

Dynamic asserts a single objection to the R&R. Dynamic argues that the Magistrate Judge erred in finding that its conversion claims against CIMA that arise from purchases of the Production from North Shore prior to December 19, 2014 are time barred. According to Dynamic, under Texas law it is entitled to tolling of the limitations period applicable to its conversion claims against CIMA until the Texas Supreme Court issued its decision in the Goliad Suit and remanded the case back to the trial court for further proceedings. The Court is unpersuaded and **overrules** Dynamic's objection.

The premise of Dynamic's objection is that the Goliad Suit trial court judgment holding that Dynamic did not own the Well prevented Dynamic from suing CIMA for conversion until the Texas Supreme Court issued its final decision

---

[6] North Shore filed a Chapter 7 bankruptcy in the United States Bankruptcy Court of the Western District of Texas on March 10, 2017, which served as the basis for Dynamic to remove this lawsuit from the 189th District Court, Harris County, Texas to federal court on April 4, 2017. *See* Notice of Removal [Doc. # 1].

in that case. Dynamic contends specifically that (i) its conversion claims against CIMA depended on the outcome of the Goliad Suit regarding ownership of the Well and (ii) it was collaterally estopped from asserting in litigation against CIMA ownership[7] of the Well and the land on which it is located while the trial court's judgment was effective.[8] Relying primarily on *Cavitt v. Amsler*,[9] Dynamic contends that Texas law tolls limitations "for a second cause of action in instances where the viability of the second cause of action necessarily depends upon the outcome of the first case *and* the pursuit of the second suit prior to that outcome would either be improper or result in judicial complications." *Id*. at 249 (emphasis added). Dynamic also invokes *Cavitt* for the proposition that "[w]here a person is prevented from exercising his legal remedy by the pendency of the legal proceedings, the time during which he is thus prevented should not be counted against him determining whether the limitations have barred his right." *Id.* Dynamic's reliance on *Cavitt* is misplaced.

---

[7]    Ownership (or a comparable right to use of the land) is a necessary element of a conversion claim.

[8]    Dynamic also invokes the doctrine of *res judicata* in its Objection, but acknowledges in its Response to CIMA's Objections that *res judicata* is not applicable here because CIMA was not a party in the Goliad Suit. Response [Doc. # 56], p. 4 n.1; *Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 115 (Tex. App.–Houston [14th Dist.] 2001, no pet.).

[9]    242 S.W. 246 (Tex. Civ. App.—Austin 1922, writ dism'd w.o.j.).

In the R&R, the Magistrate Judge correctly recognized that for conversion claims, "limitations begin to run at the time of the unlawful taking and expire in two years." R&R, p. 22. At least one Texas court has squarely rejected the argument that title to an asset must be definitively established before a conversion claim can accrue. *See Rogers v. Ricane Enterprises, Inc.*, 930 S.W.2d 157, 175 (Tex. App.—Amarillo 1996, writ denied) ("Indeed, because ownership of property or a superior right to possession of the personal property at the time of conversion is material as bearing on the issue of conversion, that question is inextricably intertwined with the determination of conversion and the books are replete with cases in which both questions are determined in a single case.") (internal citations omitted). Dynamic, which simultaneously brought both quiet title and conversion claims against North Shore in the Goliad Suit, is well aware of that proposition. It is clear from the record that Dynamic had actual knowledge of CIMA's alleged conversions as early as January 2011, and, thus, its conversion claims began to accrue in January 2011, at the latest.[10] It is beyond dispute that until at least September 2011, Dynamic was free to bring conversion claims against CIMA, just as it had done against North Shore, in a separate litigation if not in the Goliad Suit

---

[10] The parties do not dispute that, to the extent CIMA's purchase of the Production from North Shore constitutes conversion, a separate cause of action for conversion accrues each time CIMA purchased the Production.

itself.[11]  However, Dynamic chose not to assert claims against CIMA at that time.

*Cavitt* does not assist Dynamic in regard to its failure to assert a conversion claim

against CIMA before September 2011.

Dynamic also contends that once the trial court in the Goliad Suit ruled in

September 2011 that it did not own the Well, that ruling collaterally estopped

Dynamic from suing CIMA and such preclusive effect lasted until December 2016,

---

[11]  Dynamic cites *Merry Homes, Inc. v. Luc Dao*, No. 14-16-00724-CV, 2017 WL 4159206 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.), a case in which an individual's "money had and received" claim was held to accrue when the underlying lease in issue was judicially invalidated, for the proposition that its conversion claim against CIMA did not accrue until its ownership of the Well was determined by the Texas Supreme Court.  However, *Merry Homes* is distinguishable in at least two key respects.  First, the underlying cause of action in *Merry Homes* was for the equitable claim of "money had and received," not conversion.  Owing to its equitable nature, the accrual date for a "money had and received" claim is more flexible than the accrual date of a conversion claim.  *See id*. at *3 ("A claim for money had and received generally accrues when money is paid.  Other circumstances, however, may affect the accrual date, such as when money is rightfully held originally but later retained under inequitable circumstances.") (internal citations omitted).  Second, the individual whose claim was "tolled" in *Merry Homes* until the lease was invalidated actually attempted to assert his claim earlier in the litigation, but was precluded from doing so on standing grounds.  *See id*. at * 4 ("By Merry Homes' own words, Dao lacked standing to challenge the validity of the lease as a non-party to the agreement. The trial court agreed with Merry Homes and dismissed Dao's claim that the contract was void under the Texas Declaratory Judgments Act."); *id* ("Money had and received is an equitable claim that aims at the abstract justice of the case. Denying Dao the ability to establish his money had and received claim when he could not challenge the validity of the contract before it was declared void does not satisfy the aims of justice in this case.") (internal citations omitted).  There is no evidence that Dynamic made a similar effort to assert its claims against CIMA until it brought this lawsuit in December 2016 or that similar equitable considerations are warranted in connection with a claim for conversion.

8

*i.e.*, when the Texas Supreme Court issued its final ruling reversing the trial court in the Goliad Suit. Dynamic contends that, under *Cavitt*, the statute of limitations on the conversion claim against CIMA was tolled while the trial court's judgment collaterally estopped it from claiming ownership of the Well. The Court rejects this argument, which rests on an overbroad interpretation of the collateral estoppel doctrine.

Collateral estoppel is a waivable, affirmative defense under Texas law. *SWEPI, L.P. v. Camden Res., Inc.*, 139 S.W.3d 332, 338-339 (Tex. App.—San Antonio 2004, pet. denied). It is not a bar to filing suit. The Magistrate Judge correctly stated that, "[t]he judicial impediment exception is a narrow one, and in practice it has been narrowly applied." R&R, p. 26. *Cavitt* itself involved a suit "prevented by injunction." *Ellis v. Edward Abstract & Title Co.*, No. 13-98-578-CV, 2000 WL 35721235, at *4 (Tex. App.—Corpus Christi May 11, 2000, no pet.). Beyond an injunction prohibiting suit, Texas courts also have found an individual is "prevented" from exercising her legal rights when her claims are subject to a bankruptcy stay,[12] are on appeal,[13] or pertain to malpractice in an

---

[12]    *Peterson v. Tex. Commerce Bank-Austin*, N.A, 844 S.W.2d 291 (Tex. App.—Austin 1992, no writ).

[13]    *Walker v. Hanes*, 570 S.W.2d 534, 536-40 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). Dynamic never asserted conversion claims against CIMA in the
(continued…)

ongoing litigation.[14]  These circumstances do not involve affirmative defenses.  As the Magistrate Judge properly concluded, Dynamic has failed to make a persuasive authority-based argument that *Cavitt* should be applied to waivable affirmative defenses, which fall outside of the narrow circumstances warranting limitations tolling recognized by Texas courts.[15]

Dynamic also argues that policy concerns underlying collateral estoppel, namely, the avoidance of wasting scarce judicial resources, dictate that limitations tolling apply its conversion claims.   This argument lacks persuasive force. Dynamic contends it should not be required to have initiated potentially duplicative and wasteful litigation against CIMA in a different Texas court while the Goliad Suit was pending.  This argument is unavailing because, as a practical matter, it materially overstates the judicial resources used by a party that files a suit for the sole purpose of preserving its rights.  That party may seek abatement of the case pending the resolution of a related action.  Dynamic's argument also ignores the Texas Supreme Court's guidance, delivered in the analogous context of a party

---

(continued…)
Goliad Suit, and, thus, those claims were never subject to the tolling effects of an appeal described in *Walker*.

[14]  *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991).

[15]  Dynamic cites no case holding that collateral estoppel "prevents" a party from exercising its legal rights within the meaning of *Cavitt*.

potentially having to take inconsistent positions in different litigations, that "[w]hile it may be necessary to abate a [second lawsuit] pending resolution of [the first law suit], we view that procedure as preferable to holding that limitations on a plaintiff's claim begins to run when plaintiff decides it should." *Murphy v. Campbell*, 964 S.W.2d 265, 273 (Tex. 1997).[16]

Dynamic's conversion claims against CIMA accrued each time it purchased the Production from North Shore. At no time was Dynamic barred from bringing its conversion claims against CIMA. It was incumbent on Dynamic to attempt to preserve its rights by timely asserting its claims against CIMA. If CIMA asserted the affirmative defense of collateral estoppel, Dynamic easily could have sought abatement of the litigation. *See Murphy*, 964 S.W.2d at 272 ("While prosecuting both the tax suit and a malpractice suit at the same time would have required plaintiffs to take inconsistent positions, they could have avoided this by requesting the court to abate the malpractice case pending resolution of the tax suit. A court in

---

[16] Dynamic asserts also that the Court should give great deference to the judicial efficiency policies underlying the collateral estoppel doctrine here because CIMA was "apprised of the Goliad Suit every step of the way" and has suffered "no hardship or harm" from Dynamic's delay in asserting its conversion claims. This argument lacks weight. The fact that CIMA may have been apprised of a lawsuit in which a business partner was engaged does not mean CIMA had fair notice that *it* might be sued for related matters several years later. Moreover, Dynamic's argument of no harm or prejudice to CIMA ignores evidence that two key witnesses are now unavailable. Oral Argument Transcript [Doc. # 51], dated February 19, 2018 at 81:16-25.

such circumstances should abate the malpractice case pending final resolution of the tax suit.").

The Magistrate Judge correctly determined that the statute of limitations for each of Dynamic's conversion claims began to run when the conversion happened, not "when [Dynamic] decides it should." Dynamic has not articulated a cognizable basis to toll the statute of limitations on its conversion claims against CIMA and the Magistrate Judge properly concluded that Dynamic's conversion claims arising from purchases of Production that occurred prior to December 19, 2014, or two years before it filed this suit, are time barred. The Court, accordingly, adopts the Magistrate Judge's persuasive and well-reasoned discussion that tolling does not apply to the statute of limitations for Dynamic's conversion claims against CIMA. *See* R&R, pp. 21-28. Dynamic's objections to the R&R are **overruled**.

### B.    CIMA's Objections

CIMA asserts two objections to the R&R. First, CIMA argues that the Magistrate Judge erred in concluding that Dynamic has established ownership of the Production as a matter of law. *See* R&R, pp. 8-12. Second, CIMA takes issue with the Magistrate Judge's determination that the Goliad Suit conclusively negated Dynamic's acquiescence to North Shore's sale of the Production to CIMA, *See id.*, pp. 12-21, an element of CIMA's good faith purchaser defense to Dynamic's conversion claims. The Court addresses these objections in turn.

## 1.    Ownership of the Production

According to CIMA, the Magistrate Judge "erroneously placed the burden of proof on CIMA to negate Dynamic's ownership of the Production" and incorrectly concluded that the combination of the Texas Supreme Court decision in the Goliad Suit and Dynamic's lease with the Harkins family constitute evidence that Dynamic is the owner of the Production.  These objections are **overruled**.

It is undisputed that Dynamic and the Harkins family entered into an oil and gas lease in June 2010 (the "Dynamic Lease").[17]  The Texas Supreme Court conclusively determined that that the Well is located on land subject to the Dynamic Lease.  The granting clause of the Dynamic Lease explicitly granted Dynamic, as lessee, the right to investigate, explore, prospect, drill, and mine the land subject to the lease "for and producing oil and gas."  More significantly, that same clause also provides that Dynamic is entitled to lay pipeline, build roads, tanks, power stations, telephone lines and other structures "to produce, save, take care of, treat, transport *and own*" the oil and gas produced from that land.  *Id*. (emphasis added). Accordingly, based on the Texas Supreme Court's decision in

---

[17]    Oil and Gas Lease [Doc. # 22], at ECF 7-8.  The lease broadly defines "oil and gas" to including "oil, gas, casinghead gas and the by-products thereof, and such other hydrocarbon substances and sulphur as are produced with, incidental to, and as part of the production of oil or gas." *Id.*

the Goliad Suit[18] and the plain and unambiguous terms of the Dynamic Lease, the Magistrate Judge correctly concluded that Dynamic carried its summary judgment burden of establishing itself as owner of the Production.

Once Dynamic carried its burden of establishing ownership of the Well's production, the Magistrate Judge properly shifted the burden to CIMA of "demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." R&R, p. 6. CIMA has not produced any evidence that creates a genuine fact issue regarding Dynamic's ownership of the Production. The Texas Supreme Court eliminated any doubt that the Well is located on land subject to the Dynamic Lease and that North Shore never had any valid property interest in that same land.[19] Further, CIMA cites no evidence that the Dynamic

---

[18]  CIMA's assertion that the Magistrate Judge "overstated" the Texas Supreme Court's decision in the Goliad Suit lacks merit. The trial court in the Goliad Suit invalidated the Dynamic Lease as a cloud on North Shore's title to the underlying property. In reversing the trial court's summary judgment order, the Texas Supreme Court also specifically acknowledged the validity of the Dynamic Lease. Accordingly, the Magistrate Judge accurately described the Texas Supreme Court's decision as "reinstating" the Dynamic Lease.

[19]  CIMA's attempts to minimize the significance of the Texas Supreme Court's ruling are unpersuasive. Although CIMA argues that the Texas Supreme Court did not "affirmatively conclude that Dynamic holds title to the disputed mineral interest" or "express any opinions about Dynamic's conversion claim or title to the personal property interest," those facts, even assuming they are true, are not dispositive of the issue. Moreover, the Magistrate Judge's conclusions in the R&R were based on the combined effect of the Texas Supreme Court's decision in the Goliad Suit and the terms of the Dynamic Lease, not the Texas Supreme Court's decision standing alone.

14

Lease is invalid, fails to include the Production, or otherwise is subordinated to, abrogated by, or conflicts with another valid agreement covering the same tract of land. There is no evidence in the summary judgment record that supports a reasonable inference that anyone other than Dynamic owns the Production.[20]

Accordingly, the Court adopts this section of the R&R. *See* R&R, pp. 8-12. CIMA's first objection to the R&R is **overruled.**

### 2. Non-Acquiescence to North Shore's Retention or Possession of the Production

CIMA's second objection relates to its claimed status as a good faith purchaser of the Production under Texas common law and the Texas Business and Commerce Code (the "TBCC"). According to CIMA, North Shore was a merchant "entrusted" with goods (*i.e.*, the Production) under TBCC § 2.403(b)[21] because Dynamic "acquiesced" in North Shore's retention and possession of the

---

[20]  CIMA's assertion that the "*North Shore v. Harkins* opinion and Dynamic's lease from the Harkins do not constitute evidence of ownership" of the Production is wholly unsupported, conclusory and incorrect. It simply ignores, to an unreasonable degree, the plain language of each.

[21]  Section 2.403(b) states "(b) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." TEX. BUS. & COM. CODE § 2.403(b). Section 2.403(c) defines "entrusting" as including "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." *Id*. at 2.403(c).

Production. CIMA argues that because it was a good faith purchaser of goods from a merchant entrusted with those goods, it cannot be liable for conversion as a mater of law.

In the R&R, the Magistrate Judge rejected this argument on the grounds that the summary judgment evidence demonstrated as a matter of law that Dynamic had not "acquiesced" to North Shore's retention or possession of the Production. Specifically, the Magistrate Judge concluded that once Dynamic asserted a claim for conversion against North Shore in the Goliad Suit and CIMA became aware of that fact, CIMA could not reasonably believe that Dynamic acquiesced to North Shore's retention or possession of the Production.

The gravamen of CIMA's objection is that the Magistrate Judge erred in concluding that CIMA's knowledge of the Goliad Suit and Dynamic's claims for conversion against North Shore forecloses the "acquiescence" argument as a matter of law. CIMA urges that the question of whether Dynamic entrusted the Production to North Shore is a question of fact, and evidence in the summary judgment record creates a genuine issue whether CIMA had a reasonable basis to believe Dynamic had done so. This objection is overruled.

CIMA correctly notes, as did the Magistrate Judge, that the question of acquiescence is generally one of fact. *See Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 270 (5th Cir. 1981) ("While some courts have strictly

interpreted the requirements of 'delivery' and 'acquiescence,' entrustment is a question of fact"). For purposes of TBCC § 2.403(b), Texas law defines "acquiescence" as implied consent to a transaction.[22] CIMA cites no authority, and it defies logic, for a party to be found to have "acquiesced" to an action it has sued to prevent. To the contrary, an adversarial lawsuit unambiguously establishes that a party does not consent, by implication or otherwise, to another's conduct. *See Conseco Fin. Servicing Corp. v. Lee*, No. 14-03-01194-CV, 2004 WL 1243417, at *6 (Tex. App.- Houston [14th Dist.] June 8, 2004) ("The uncontroverted summary judgment proof that [the plaintiff] instituted suit against [a third party], but was unable to locate and serve her, supports the inference [the plaintiff] did not acquiesce in any such entrusting."); *Pan E. Expl. Co. v. Hufo Oils*, 855 F.2d 1106, 1139 (5th Cir. 1988), *superseded on other grounds by*, TEX. BUS. CORP. ACT art. 2.21 ("Their entrustment claim was based on an assertion that the plaintiffs and PEPL acquiesced in True's retention of casinghead gas. The defendants essentially concede in their briefs that the entrustment ceased at the time suit was filed against True. . . . The license defense suffers from a combination of the problems with release and entrustment. To the extent Mitchell argues that PEPL and the plaintiffs unilaterally granted a license to buy gas from True, the implied license was

---

[22]     *Rogers*, 930 S.W.2d at 174 (citing BLACK'S LAW DICTIONARY 14 (6th ed. 1991)).

revocable at will and was revoked (at the latest) when the plaintiffs filed suit against True."); *see also Nat'l Music Museum: Am.'s Shrine to Music v. Johnson*, 169 F. Supp. 3d 922, 930 (D.S.D. 2016) (finding that reasonable fact finder could conclude that owner had acquiesced to the defendant's possession, in part, because the owner "did not take legal action for several years after he learned that [the defendant] had removed the guitar from" the plaintiff's possession). It is undisputed that Dynamic asserted conversion claims against North Shore in the Goliad Suit related to the Production and that CIMA became aware of those claims no later than September 2011. The Court agrees with the Magistrate Judge that once CIMA became aware that Dynamic sued North Shore for converting Dynamic's property (*i.e.,* the Production), the same property that CIMA was purchasing regularly from North Shore, CIMA no longer had any meaningful basis to believe that Dynamic had acquiesced to North Shore's retention or possession of that property.

CIMA also contends that notwithstanding Dynamic's claims against North Shore in the Goliad Suit, there is other evidence in the summary judgment record, including evidence that Dynamic did not challenge the certificates that North Shore filed with the Texas Railroad Commission that designated North Shore as the owner and operator of the Well, which evidence allegedly creates a triable issue of fact regarding the reasonableness of CIMA's belief that Dynamic had "entrusted"

the Production to North Shore.[23]  This contention lacks merit.  As the Magistrate Judge correctly concluded in the R&R, CIMA produced evidence from which a reasonable trier of fact could conclude that, prior to September 2011, Dynamic acquiesced to North Shore's possession of the production. R&R, pp. 19, 21 n.9. However, the evidence cited by CIMA relates entirely to actions by North Shore and alleged material omissions by Dynamic.  None of this evidence counters or mitigates Dynamic's affirmative acts of vigorously pursuing in the Goliad Suit conversion claims against North Shore.  In essence, CIMA takes the untenable position that a buyer of goods from a merchant reasonably could believe that the owner of the goods had "acquiesced" to that merchant's possession and sale of those goods, despite the buyer knowing the owner filed and is aggressively prosecuting a suit against the merchant alleging that the merchant converted those very same goods.  *See also Olin Corp. v. Cargo Carriers, Inc.*, 673 S.W.2d 211, 216 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("Although a seller may have possession and represents that he has title to the property, an innocent purchaser still cannot defend against the true owner, unless there has been some affirmative

---

[23]    CIMA also argues that Dynamic's failure to attempt to remove North Shore's equipment from its land and failure to pursue injunctive relief against CIMA, either in the Goliad Suit or a separate lawsuit, are further evidence of Dynamic's "acquiescence." R&R, p. 19.

act by the owner which either creates apparent authority to sell the property in the seller or clothes the seller with the indicia of ownership.")

CIMA appears to argue that Dynamic's inactions and omissions created a legally sufficient basis for it to believe that North Shore had, at a minimum, Dynamic's tacit approval to sell the Production. This argument is unavailing under the circumstances presented. As the Magistrate Judge correctly recognized, "if Dynamic failed to contest North Shore's actions, it could be found to have acquiesced to North Shore's possession." R&R, p. 19 (citing *Rogers*, 930 S.W.2d at 170-175. However, any perception by CIMA based on Dynamic's failure "to contest North Shore's actions," necessarily and unambiguously ended in September 2011 when CIMA learned about Dynamic's conversion claims in the Goliad Suit against North Shore regarding the very property North Shore was selling to CIMA.

Even if Dynamic's actions, or lack thereof, before and immediately after September 2011, could be deemed to have created a genuine factual dispute whether CIMA could reasonably believe Dynamic had entrusted North Shore with the Production, Dynamic's conversion claims against CIMA arising from purchases made before December 19, 2014 are time barred. *See* Section II.A, *supra*. In summary, CIMA cites no summary judgment evidence that creates a genuine question of fact on the issue of whether, after December 19, 2014,

Dynamic had "acquiesced" to North Shore's retention, possession, or sale of the Production. In contrast, there is persuasive evidence that CIMA understood several years earlier via its knowledge of the Goliad Suit that Dynamic expressly objected to North Shore's sale of the Production, an objection Dynamic continues to maintain to the present. The Magistrate Judge correctly determined that Dynamic is entitled to Summary Judgment that CIMA could not reasonably have believed that Dynamic "entrusted" North Shore with the Well or its production after it learned of Dynamic's conversion claims against North Shore in the Goliad Suit.

Therefore, the Court adopts the reasoning of the R&R on this issue. *See* R&R, pp. 12-21. CIMA's second objection is **overruled**.

## III.   CONCLUSION

For the foregoing reasons, and Magistrate Judge Palermo's reasoning in the Report and Recommendation [Doc. # 50], it is hereby

**ORDERED** that the Report and Recommendation [Doc. # 50] is **ADOPTED** in its entirety. It is further

**ORDERED** that Dynamic's Objections [Doc. # 53] and CIMA's Objections [Doc. # 54] to the Report and Recommendation are **OVERRULED**. It is further

**ORDERED** that CIMA's Motion for Summary Judgment [Doc. # 32] on the affirmative defense of limitations is **GRANTED IN PART**, to the extent Dynamic

alleges claims for conversion occurring before December 19, 2014.  All such claims are **DISMISSED WITH PREJUDICE**.  In all other respects, CIMA's Motion for Summary Judgment is **DENIED**.  It is further

ORDERED that Dynamic's Motion for Partial Summary Judgment [Doc. # 21] for conversion is **GRANTED** with respect to claims arising from CIMA's purchase of the Production on or after December 19, 2014.  In all other respects, Dynamic's Motion for Summary Judgment is **DENIED**.  It is further;

ORDERED that CIMA's Motion for Partial Judgment on the Pleadings on Plaintiff's Claim for Attorneys' Fees [Doc. # 30] is **DENIED** as untimely.

SIGNED at Houston, Texas, this <u>19</u>th day of **April, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

22